## STATE OF LOUISIANA vs. JUDGE OF THE FIRST DISTRICT.

AN APPLICATION FOR A WRIT OF PROHIBITION, IN THE MATTER OF LARTIGUE vs. PEET & NORTH.

An oath is not required to a petition for a writ of prohibition, if the truth of the facts stated in it appear from an inspection of the record and proceedings had in the case.

Where, by an error of the Judge *a quo*, in refusing to give to the appeal the effect of a suspensive one, by authorising an execution to issue, after being divested of jurisdiction, a writ of prohibition is the proper remedy to correct such error.

The signature of the parties to a blank appeal bond is binding on them, and may be filled up afterwards, to operate as a suspensive appeal.

When a suspensive appeal is once granted and bond signed accordingly, the jurisdiction of the judge *a quo* is at end, after ascertaining the security is good.

A writ of prohibition may issue to suspend the action of an inferior tribunal for a time, and until it legally resume the exercise of its former jurisdiction.

The judge of an inferior court cannot grant an order of seizure and sale, after an appeal is taken from his *refusal* to issue the same order, previously applied for. But if *he does*, the proper remedy to arrest his proceedings, is by a writ of prohibition.

The authority to grant writs of prohibition, is considered, in relation to the constitution, which allows to this court appellate jurisdiction only, and is to be confined to matters, which have a tendency to *aid that jurisdiction.*

This case arises on an application for a writ of prohibition to the Judge of the first judicial district requiring the plaintiff in execu-

tion, Lartigue and the sheriff executing it, to abstain from and stop all proceedings under the judgment and execution, until the defendants therein, Peet & North, can be heard on appeal.

EASTERN DIS.
July, 1841.

STATE OF LA.,
vs.
JUDGE OF THE
FIRST DISTRICT.

The facts show, that Lartigue obtained a judgment against Peet & North, in the district court, for $607 50, upon which the latter prayed a suspensive appeal, and filed their bond with a surety in the sum of $1000. The bond was signed, and the sum inserted, but the blanks left in the printed form were not filled up with the names of the appellee, and the date, &c. The appeal was granted the 28th April, 1841, and on the 11th May a rule was taken on the appellants to show cause, why the appeal should not be dismissed. 1. That there was no bond executed by the defendants in favor of the plaintiff, according to law. 2. That the security tendered by the defendants in the instrument purporting to be an appeal bond, is insufficient. On hearing the rule, testimony was taken to show the surety was solvent and liable for the sum in the appeal bond. But the judge *a quo* ordered, that the "rule be discharged, without *prejudicing the rights of the plaintiff to take out execution*." Upon this order the execution in question issued, and the sheriff was proceeding to seize and sell the property of the defendants therein.

*Grymes*, for the defendants in said execution, applied for a prohibition on the district judge; the plaintiff and sheriff to stay further proceedings, until they could be heard on their appeal. The application was made to this court by simple petition, and not sworn to.

The District Judge showed cause, why the prohibition should not issue, and appeared in support of his position and grounds. They are stated in the opinion of this court.

*Simon, J.* delivered the opinion of the court on this application.

This case is brought before us on a rule obtained by the defendants, requiring the judge of the district court, the sheriff

EASTERN DIS. and the plaintiff, to show cause, why a writ of prohibition should
*July*, 1841. not issue.   The applicants represent, that on the 19th of April,
STATE OF LA., 1841, a final judgment was rendered against them in the district
*vs.* court of the first judicial district in favor of the plaintiff; that
JUDGE OF THE
FIRST DISTRICT. on the 28th of the same month they presented their petition of
appeal, and gave bond and security according to law, to operate
a stay of execution, and that notwithstanding said appeal so
taken, plaintiff has been permitted by the district court to take
out execution against them, on the judgment appealed from,
which execution is now in the hands of the sheriff of said
court.

It appears from the record, that on the 28th of April, 1841,
a printed appeal bond, containing several blanks, was filed by
the appellants, after having been signed by them and their se-
curity ; that when said bond was filed, the sum of $1000 was
filled up in the blank as the amount thereof, and that all the other
blanks in the bond, including the name of the appellee, were
not filled up until the 28th of May following, when they were
so filled up by the clerk of the district court, with whom the
bond had been left by the appellants, at which time the
transcript of the record for the supreme court was completed,
including the appeal bond.   In the mean time, the appellee
obtained from the court below a rule on the appellants, to show
cause, why the appeal should not be dismissed on the grounds,
that no appeal bond had been executed according to law, and
that the security tendered in the instrument, purporting to be
an appeal bond, was insufficient.   This rule was discharged by
the district judge, *without prejudicing the rights of the plain-*
*tiff to issue execution.*

The lower judge has shown for cause :  1. That the petition
filed herein is not sworn to according to law.   Code of Pract.,
art. 848, and French text.

2.  That if there is any ground for prohibition, under the
allegations of the petition, said writ should not issue against
the undersigned, but against the party prosecuting the execu-
tion, and the sheriff of the district court.  C. Pr. 850, 853.

3. That the petition shows no legal ground for the writ of prohibition.

EASTERN DIS.
July, 1841.

4. That the petitioner has mistaken his remedy, which was by injunction or appeal.

STATE OF LA.,
vs.
JUDGE OF THE
FIRST DISTRICT.

The appellee and the sheriff have not answered, but their counsel having agreed to adopt the answers of the judge as their own, we shall proceed to examine the above grounds relied on by them, in the order in which they have been set up; after having bestowed on the questions therein presented, all the attention which their importance requires.

I. The *article* 848 of the Code of Practice provides, that " the court, to which this petition (for a writ of prohibition) is offered, shall require the oath of the petitioner to the truth of the facts stated in it, unless these facts be proved by the mere examination of the prayer or of the proceedings which took place before the inferior court." In French it says : " *La cour devra éxiger le serment du pétitionnaire, et à moins que ces faits ne soient prouvés par l'inspection seule, &c.*" It does not appear to us, that it was necessary in this case to require the oath of the petitioner, as the facts, on which the application is made, are sufficiently proved by an inspection of the record of the proceedings had before the inferior court. We understand the law to mean, that we should require the allegations contained in the petition to be sworn to, only in case of our not being satisfied of their existence, after an examination of the prayer or of the proceedings, and that such an oath is not to be taken, unless we require it. *C. of Pr.* 849.

An oath is not required to a petition for a writ of prohibition, if the truth of the facts stated in it appear from an inspection of the record and proceedings had in the case.

II. It is true, that the inferior judge has nothing to do with the issuing of the execution of a judgment; this proceeding generally takes place at the request of the party who instructs the clerk accordingly, and when put in the hands of the sheriff, it is carried into effect without the interference or interposition of the judge; but in this case, the execution was issued in consequence of a special order of the court, that the appeal should not operate as a suspensive one, the rule being discharged, *without prejudicing the rights of the plaintiff to*

EASTERN DIS. *issue his execution.* Then the question presents itself: was
July, 1841. the appeal suspensive or merely devolutive? If suspensive,
STATE OF LA., we have often and very lately decided again, that the lower
*vs.* court has no longer any jurisdiction in the cause, until the case
JUDGE OF THE
FIRST DISTRICT. having been disposed of by the appellate court, its mandate is
returned below for execution; and consequently, the inferior
judge had no power to order an execution to issue. 4 *La.
Rep.*, p. 205; 15 *Idem*, 391; and the case of *D. T. Walden*
vs. *City Bank, ante*, 167,. If devolutive, the appellee
was at liberty to take out his execution, without any necessity
of applying to the district judge for that purpose. In such a
case however, we understand from the *art.* 853 *of the Code of
Practice*, that if, on an application made to this court for a writ
of prohibition, it were to be shown, that the execution issued
illegally and unadvisedly in a cause, where the inferior court
had no jurisdiction, that is to say: because it had been deprived
of further jurisdiction by a suspensive appeal, a writ of pro-
hibition could then properly issue, directed as well to the party
proceeding as to the officer charged with the execution, without
any reference to the judge who rendered the judgment. But,
in the present case, the execution was issued by the party after
having obtained the action or opinion of the district judge on
the legality of this proceeding, after the appeal had been grant-
ed, and the bond and security furnished, and it seems to us,
that if it be established, that the appeal taken by the applicants
ought to operate as a suspensive one, our mandate should as
well be directed to the district judge, who would be thus found
Where, by an
error of the to have exceeded the bounds of his jurisdiction as to the plain-
judge *a quo*, in tiff and the officer.
refusing to give
to the appeal the We are not ready to deny to the district court the power of
effect of a sus-
pensive one, by trying, on motion, the sufficiency of the security furnished on
authorising an
execution to is- the appeal bond; indeed, this was not controverted and was
sue, after being
divested of juris- even indirectly recognized as the proper course to be pursued,
diction, a writ
of prohibition is in the case reported 13 *La. Rep.* 574; but we think, that if an
the proper re-
medy to correct error be committed by the court below, by refusing to give to
such error. the appeal the effect of a suspensive one, and by authorizing

an execution to issue after becoming divested of jurisdiction, the proper remedy to correct such error, ought to be by a writ of prohibition under the provisions of our laws.

EASTERN DIS.
*July*, 1841.

STATE OF LA.,
*vs.*
JUDGE OF THE
FIRST DISTRICT.

III. The petition and the record show, that the appellants had caused their security to sign a printed appeal bond, one of the blanks of which was filled up at the time with the amount fixed by the judge, and that said bond was filed with the clerk within the ten days allowed by law. In our opinion, this bond was sufficient to bind the security. In the case of *Breedlove* vs. *Johnston*, 2 *Martin*, *N. S.*, 517, this court held in substance, that the obligor who gives his signature in blank, is bound by the obligation which may be written above it; in the present case, as in the one just quoted, it is clear that the security left his signature with the proper officer, for the purpose of filling up over it, the blanks of an instrument, which was to be used as an appeal bond; he intended to be bound in the sum of one thousand dollars, and we cannot see any good reason, why he should not be held responsible in the manner, in which he consented to bind himself. This bond then was sufficient to make the appeal suspensive; and if so, the jurisdiction of the district court being suspended, the judge, after finding that the security was good and solvent, could not legally take any further step in the cause, by ordering an execution to issue; the plaintiff was precluded from taking it out, and the sheriff from carrying it into effect. We think therefore, that the grounds set forth in the applicants' petition are sufficiently legal for obtaining a writ of prohibition.

*The signature of the parties to a blank appeal bond is binding on them, and may be filled up afterwards, to operate as a suspensive appeal.*

*When a suspensive appeal is once granted, and bond signed accordingly, the jurisdiction of the judge a quo is at end, after ascertaining the security is good.*

IV. It has been strenuously urged that the appellants have mistaken their remedy which was by injunction or by appeal; and we must confess that our opinion was, in a great extent, shaken by the plausibility of the able and ingenious arguments of the district judge who appeared before us *in propria persona;* but on a closer examination of the subject, we have not been able to come to a different conclusion. This court has repeatedly disclaimed *a general superintending* control over the inferior jurisdictions, and when called upon to exercise

EASTERN DIS. any of those powers incident to our appellate jurisdiction, in
July, 1841. cases which do not come before us directly by appeal, we have
STATE OF LA., always required a strong case to be shown, and have generally
vs.
JUDGE OF THE felt the greatest reluctance in ordering the issuing of those writs
FIRST DISTRICT. which have mainly and particularly for their object the re-
straining or limiting of the inferior courts in the exercise of
their legal and constitutional jurisdiction.    Such are the views
of this court as expressed in the case of the *State vs. Judge
Bermudez*, reported in 14 *La. Rep.*, 481 ; but, after mature
deliberation, it has appeared to us that the circumstances of
the present case are so clearly within the meaning of the
articles 845 *to* 854 *of the Code of Practice*, that the remedy
therein allowed seems to have been provided for, for the very
purpose, among others, of preventing the injury complained of
by the applicants.    Indeed, the matter in controversy before
us presents no other issue between the parties, but a mere
question of legal requisites :    Was the law allowing a party a
suspensive appeal complied with or not?    The solution of this
question is a matter connected with our appellate jurisdiction,
and has a tendency to aid it or to make it effectual ; if so we
must conceive ourselves authorized and, even bound to inter-
fere with the proceedings of the lower court, and to afford the
party complaining that protection which will secure to him the
free exercise and ulterior benefit of his right of appeal ; this
object would not be attained by an injunction or by a second ap-
peal, as it would be imposing on the appellants, who would be
bound to furnish further security, in both cases, such additional
conditions as have never been in the contemplation of our laws.
If the applicants, from a strict compliance with the requisites
of the law, are entitled to a suspensive appeal, they must enjoy
the right of bringing it before us without being subjected to
the risk of sustaining an irreparable injury or to the inconven-
ience and difficulty of instituting a new suit and of procuring
additional security.

It has also been insisted that the object and effect of the writ
of prohibition is to preclude the lower court forever from acting

or entertaining jurisdiction in a cause: It may be so in some cases, but under our laws, we think that a writ of prohibition may also properly issue to suspend the action of an inferior tribunal during a certain length of time, and until it can legally resume the exercise of its former jurisdiction. Prohibition is defined to be "the name of a writ issued by a superior court directed to the judge and parties of a suit in an inferior court, commanding them to cease from the prosecution of the same, upon a suggestion that the cause originally, or *from some collateral matter arising therein*, does not belong to that jurisdiction, but to the cognizance of some other court." *Bouvier's Law Dictionary*, verbo, *prohibition ; 3 Blackstone*, 112. In the case of an appeal, it is clear that the jurisdiction of the lower court is provisionally suspended, and that the judge cannot take cognizance of any proceeding in the cause, until the return of the mandate of this court ; and if, during the pendency of the appeal it becomes necessary, from some collateral matter arising in the cause in the inferior tribunal, to issue a writ of prohibition, such writ, which, although called prohibition, is really in the nature of the common law, writ of *supersedeas*, will cease to have its effect after the cause is either sent back for a new trial or remanded for execution of the judgment.

We are therefore of opinion that the application of the appellants ought to be sustained, and that a writ of prohibition should issue directed to the judge *a quo*, to the appellee and to the sheriff.

Our learned brother of the District Court has endeavored, in his arguments, to controvert the opinion of this court lately delivered in the case of *D. T. Walden* vs. *the City Bank*, 17 *La. Rep.* 511. He has attempted to convince us that the remedy in that case was by appeal only, and not by a writ of prohibition ;—that our decision was inconsistent with our first decree in the same cause : *ante* 167—and that we had assumed original jurisdiction in a manner contrary to the constitution of the State.

We have already expressed our views with regard to the

EASTERN DIS.
*July*, 1841.

STATE OF LA.,
*vs.*
JUDGE OF THE
FIRST DISTRICT.

A writ of prohibition may issue to suspend the action of an inferior tribunal for a time, and until it legally resume the exercise of its former jurisdiction.

EASTERN DIS.
*July*, 1841.

STATE OF LA.,
*vs.*
JUDGE OF THE
FIRST DISTRICT.

remedy by appeal; we have shown the inconvenience and difficulty with which it would be attended, and in the case alluded to, this remedy would have proved not only insufficient, but entirely unavoidable. Indeed, what would have been the course pursued on an appeal from the order of seizure and sale in question? Forsooth, that the case would have been brought before us without any other issue and evidence but the petition and the documents thereto annexed; nothing else could have been shown before this court but the errors, if any, apparent on the face of the record, and the appellant, unable to put before us the real condition of his case, would thus be deprived of the relief which the law allows him to prevent the inferior judge from exceeding the bounds of his jurisdiction, and for the preservation of his legal rights under the previous appeals; for this purpose, it was necessary for him to show that a former appeal was pending from a judgment refusing the same order of seizure and sale; that an appeal was also pending from a judgment dissolving a writ of injunction originally granted to prevent the issuing of the order, and that the lower court had transcended its authority and jurisdiction by disregarding the three appeals, and ordering a writ of seizure and sale to issue, whilst all proceedings were suspended by the injunction. Without the evidence of these facts, the remedy resorted to by an appeal from the order of seizure and sale, would have been wholly ineffectual and nugatory. We are still of opinion that the District judge could not grant an order of seizure and sale after an appeal had been taken from his refusal to issue the same order previously applied for; that he had no right to rescind a former judgment in a case which was pending before the appellate court, and that the proper remedy to arrest his proceedings was by a writ of prohibition.

The judge of an inferior court cannot grant an order of seizure and sale, after an appeal is taken from his *refusal* to issue the same order, previously applied for. But if *he does*, the proper remedy to arrest his proceedings, is by a writ of prohibition.

It has been also contended that our first decree in the case of Walden *vs.* the City Bank, is inconsistent with the second: the former was rendered under very different circumstances; the application there was made for the purpose of preventing the District judge from trying a cause on its merits, whilst an

appeal was pending from an interlocutory judgment dissolving
a writ of injunction.    We said that the judgment upon the rule,
dissolving the injunction, far from being upon the merits was
upon a matter purely incidental, that the appeal therefrom did
not divest the court *a quâ* of jurisdiction, since there was no
final judgment, and that it was clear that as a final judgment
remained yet to be pronounced after a trial on the merits quite
independently of any decision which might be rendered on the
previous appeal, no writ of prohibition could issue to arrest the
proceedings complained of.    We are unable to perceive any
inconsistency between the two decisions, which, on being con-
fronted, will clearly appear to be predicated on very distinct
and different questions.

But it has been maintained that by granting the writ of pro-
hibition *sub modo*, and by requiring the applicant to furnish a
bond with security for seventy-five thousand dollars, for the
purposes set forth in our decision, our decree was a violation of
the constitution of the State.    The writ of prohibition, the
power to grant which, is specially allowed by the code of prac-
tice to appellate courts of competent jurisdicion, is not a writ of
right; it is within the sound discretion of the tribunal to which
the application is made, and the party who resorts to it, is
bound to establish such facts as to convince the appellate court
that the remedy applied for is necessary, not only for the pro-
tection of the legal rights of the party, but also and principally
for the constitutional exercise of our appellate jurisdiction.    We
understand therefore that the authority thus granted, being con-
sidered in relation to the constitution which allows to this court
appellate jurisdiction only, is to be confined to matters which
have a tendency to aid that jurisdiction, and that the issuing of
the writ of prohibition, under the circumstances shown, may be
constitutionally ordered upon such conditions as, in our legal
discretion, we may think proper to impose on the applicant for
the protection and benefit of his adversary, the exercise of
whose rights, during the appeal, is to be suspended by such
writ.    In the case in question, the relief sought for, among

*The authority
to grant writs
of prohibition,
is considered, in
relation to the
constitution,
which allows to
this court appel-
late jurisdiction
only, and is to
be confined to
matters, which
have a tendency
to aid that juris-
diction.*

EASTERN DIS. other objects, was to give effect to a writ of injunction which,
*July*, 1841. having been granted by the lower court, had been subsequently
STATE OF LA., dissolved, and was pending before us on a suspensive appeal.
*vs.* We said that the injunction was revived and continued in force
JUDGE OF THE by the appeal, that it was not in the power of the inferior
FIRST DISTRICT. judge to destroy its effect, as long as the matter in controversy
remained undetermined in this court; and that therefore his
proceedings should be arrested. But in exercising this dis-
cretionary authority, for the purpose of aiding our jurisdiction,
we thought that it was also necessary to secure the other party
against the injurious consequences which might result from the
keeping in force of the injunction during the pendency of the
appeal. This was not prejudging the ultimate decision of the
cause; this was not declaring that the injunction was legally
and rightfully granted and sued out in the court below, and
properly kept in force in the appellate court; this cannot be
considered as granting a new injunction and as being thereby
an undue assumption of original jurisdiction; the injunction
already existed, its effect after the appeal had been disregard-
ed by the lower court, and in accordance with our former
opinion, we still think that, in order to reinstate it by a writ of
prohibition, and to preserve to the appellant the ulterior bene-
fit of his appeal, we had the power, in the exercise of our sound
legal discretion, to require of him that he should furnish addi-
tional security against the consequences of the provisional effect
of the injunction before the appellate court.

It is therefore ordered, adjudged and decreed that the rule
be made absolute.